MEMORANDUM OF DECISION RE: PATERNITY TESTING AND DILIGENT EFFORTS
This case presents a petition for the termination of the parental rights of Evelyn R. and James C. Curtis M. who are listed as the biological parents of the minor child Melania C. The minor child is presently 18 months of age. She has lived for most of her young life in a Department of Children and Families foster placement. The child was born prematurely and tested positive for the presence of cocaine. The child demonstrated CT Page 9850 immediate withdrawal symptoms requiring medical treatment.
The court having read the verified petitions, the social studies and the various documents entered into evidence including the report of Dr. Bruce Freedman and having heard the testimony of Robyn Phelon, the DCF case worker, terminated further evidence at this time. Various issues were raised casting long shadows upon the ultimate validity of any possible judgment which may have been issued by the court.
PATERNITY ISSUE:
The court's first concern relates to the issue of paternity. Initially the mother reported to DCF that James C. was her husband and the father of the child. Subsequently, when extensively interviewed by the court appointed psychologist, the mother revealed the following facts:
1) Mother was 28 years old at the time of the interview February 10, 1997.
2) Melania is her fourth child and all of the older three children by three different fathers have been removed from her care and her parental rights have been terminated due to mother's extensive debility as a parent and due to her chronic abuse of heroin and cocaine.
3) Mother has engaged in prostitution through the years to support her drug habit.
4) The presumed father James C., has been married to Evelyn for about two years. Dr Freedman reports that Mr. C. ". . . was 70 years old, but he looked older and not in the best of health." The court confirms that from his appearance in court, Mr. C. appeared to be considerably older than his stated age and not in the best of health.
5) Mr. C. told Dr. Freedman that he thought the relationship that led to Melania was [his wife's] only infidelity as far as he knew and that he knew the father of the child by name.
6) Evelyn, the mother, told Dr. Freedman the father of the child was one Brian S., who was in jail, with whom she did cocaine. She said her husband was too old to have sex so she had to have younger men. She said Brian S. had contacted her to CT Page 9851 express interest in knowing about his child. She said she intended to provide him with information and send him pictures. She did not want him to have anything to do with her.
The court finds that this evidence clearly and convincingly overcomes any presumption of paternity in favor of the respondent James C. The balancing of interest tests required of the fourth amendment under a due process analysis requires a fact-based balancing of the individual's interests against the needs of society to infringe upon those protected paternal interests. In order to balance those interests, the court is satisfied that there has been an adequate record at this evidentiary hearing to establish a need for a paternity test. See In Re Daline, (Feb. 16, 1994) 1994 Ct. Sup. 1642 Hartford SCJM, (Foley, J).
The court, sua sponte, orders paternity tests to be conducted upon the presumed father, the mother and the child. In the event the testing excludes the named father, then the court orders the putative father Brian S. to submit for such testing, provided he can be found.
DILIGENT SEARCH:
A second troubling aspect of this case relates to the attempts of the petitioner to amend the petition to allege the paternity of Brian S. The specific difficulty relates to the efforts to find and serve Brian. The social worker reported to the assistant Attorney General that she had made a "dingent search", was unable to locate the father and, accordingly, the petitioner moved the court for an order of notice by publication in a Hartford paper.
In the form affidavit (DCF-2037), the social worker lists the following as efforts to establish that she made a diligent search:
 "1. LKA was Suffield Prison. DCF contacted both Suffield Prisons and there were no listing for Brian S. . . .
2. Mother does not know father's dob or whereabouts.
 3. DCF contacted Department of Corrections, Prisoner Identification, and can not locate person without dob."
The court first notes that in about one hour's time with CT Page 9852 Evelyn, Dr. Freedman was able to learn a lot more details about Evelyn, her relationships and social history than the caseworkers have been able to establish. The court is not satisfied that diligent efforts were made to locate Brian S. In the first instance, the social worker should have conducted a detailed and very in depth interview of the mother do determine, where the father came from, where he went to school, where was his last job, where do any relatives live, when and where was he arrested, what for, where was he incarcerated, did he drive a car, did he have a Connecticut license, where did he "hang-out"? did he ever collect city assistance, etc. Hartford area social service agencies, job service and employment agencies, and the Department of Motor Vehicles should also have been canvassed regarding the whereabouts of Brian S.
The social worker staff should develop and in-depth list of questions to ask. The Commissioner should establish a protocol with the commissioner's of Motor Vehicles and Corrections, as well as, the office of Adult Probation to be able to work collaboratively to locate missing presumptive and putative fathers who inhabit our state but do not parent or support their children.
The court is convinced that the father of Melania is likely, in prison, on probation, on city assistance or, at a minimum, has had a Connecticut operator's license. These agencies should be directed by executive order or legislation, if necessary, to work cooperatively with a coordinate state agency to locate the missing fathers, if they are unwilling to do so at the request of the Commissioner of the Department of Children and Families.
ORDER:
The petitioner, in summary, is ordered to do a diligent search for the putative father. An attorney shall be appointed for Brian S. to further assist in locating him and advising him of his rights with respect to paternity and the pending petition for termination of parental rights. Paternity testing shall be completed as soon as possible.
Francis J. Foley, Presiding Judge Child Protection Session CT Page 9853